KELLEY DRYE & WARREN LLP
  Richard DeLossa (STATE BAR NO. 245181)
  James B. Saylor (*pro hac vice* forthcoming)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
rdelossa@kelleydrye.com
jsaylor@kelleydrye.com

Attorneys for Plaintiff Anchor Holdings Limited

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANCHOR HOLDINGS LIMITED, an English Limited Company, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED ON CLAIMS FOR:** |
| v. | **(1) DISSOLUTION** |
| UPPER EAST SIDE SUITES LLC, a Delaware Limited Liability Company, BENEDETTO CICO, an individual, and CARLA CICO, an individual. | **(2) APPOINTMENT OF A TEMPORARY RECEIVER OR LIQUIDATING TRUSTEE** |
| Defendants. | **(3) EQUITABLE ACCOUNTING** |
| | **(4) BREACH OF CONTRACT** |
| | **(5) BREACH OF FIDUCIARY DUTY** |
| | **(6) UNJUST ENRICHMENT** |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Anchor International Holdings Limited ("Anchor") for its Complaint against Defendants Benedetto Cico and Carla Cico (collectively, the "Individual Defendants") and Upper East Side Suites, LLC ("Upper East Side") (together with the Individual Defendants, the "Defendants"), allege as follows:

## NATURE OF THE CASE

1. This action arises out of the Defendants misappropriation, misuse and inequitable retention of Anchor's $250,000.00 investment in Upper East Side in light of the self-dealing and conflicts of interest presented by the Individual Defendants illegal activity in furtherance of a separately own business, USABOUND. The Individual Defendants, Co-Managers of Upper East Side, grossly mismanaged the business of Upper East Side and breached fiduciary duties which, upon information and belief, caused substantial diminution in value of Anchor's investment and Membership Interest in Upper East Side.

2. Upper East Side was formed to acquire, hold, manage, operate, finance, develop, maintain, and sell a specific property in New York City, located at 44-46 East End Avenue, New York, New York 10028 (the "Property"), and for no other purpose. Upper East Side's Operating Agreement (the "Operating Agreement") limits the business purposes of Upper East Side to acquisition, management, and sale of the Property.

3. Defendants solicited investments from entities throughout the world in an effort to acquire the Property. Defendant solicited Anchor, and Anchor invested $250,000.00 in exchange for a 1/15th, or 6.67% Class A membership interest in Upper East Side (Anchor's "Membership Interest").

4. Following Anchor's investment and acquisition of membership interest in Upper East Side, Defendants failed or refused to keep Anchor apprised of the progress of the business and the value of Anchor's Membership Interest, despite being required to do so by contractual and fiduciary obligations. It was not until


1
COMPLAINT

May 2015 that Anchor learned of the illegal conduct and gross mismanagement of Upper East Side by the Defendants.

5. The Individual Defendants own a separate company, USABOUND, which provides travel-related services for European clients. The Individual Defendants, in their individual capacities and on behalf of Upper East Side, used the Property to make short-term rentals (less than one month) to their USABOUND customers.

6. In 2011, Upper East Side was cited by the City of New York Environmental Control Board for violations of law relating to short-term rentals of residential property. Defendants never informed Anchor of these proceedings, or their outcome. Upon information and belief, Defendants took no action to resist these violations, or correct their conduct, to the detriment of Anchor's investment and Membership Interest.

7. Despite learning that this activity was illegal in 2011, the Individual Defendants, at all times and to the detriment of Anchor's investment and Membership Interest, continued the illegal solicitation of short-term rentals to clients of USABOUND. This continued illegal activity benefited USABOUND and the Individual Defendants, to the detriment of Anchor's investment and Membership Interest in Upper East Side.

8. Further, Defendants conducted a number of activities without consent of Anchor, and upon information and belief, the remaining Upper East Side Members, in violation of the Operating Agreement. This includes, but is not limited to, a number of self-interested transactions with USABOUND and the dilution of Anchor's Membership Interest by the unauthorized admission of additional Members to Upper East Side.

9. In 2013, Defendants' continued illegal conduct and self-interested transactions with USABOUND caused Upper East Side's lenders to demand full

1  payment of the outstanding balance of Upper East Side's loans for breaches of the
2  loan agreement relating to violations of law.
3    10.   Defendants subsequently sold the Property– the sole purpose for which
4  Upper East Side is authorized to do business – in May of 2013 at a substantial loss
5  and without notice to or consent from Anchor.  Upper East Side should have been
6  dissolved at this time, as management and sale of the Property was the only limited
7  business purpose for which it was created.  It is unknown what Defendants have
8  done with the proceeds of this sale.
9    11.   Upon information and belief, Defendants have not provided true and
10 full information relating to Upper East Side's finances so that Anchor may appraise
11 its current interest in Upper East Side and the value of Upper East Side, Defendants
12 have refused to provide all of the necessary information demanded by Anchor.
13    12.   By this action, Anchor seeks a dissolution of Upper East Side under the
14 Operating Agreement and the Delaware Limited Liability Company Act (the "Act"),
15 appointment of a temporary receiver/liquidating trustee for the protection of the
16 assets of Upper East Side and Anchor's membership interest, and for an equitable
17 accounting of Upper East Side.  As the Defendants' business tactics have been
18 exposed as illegal, and the Property has been sold, it is on longer reasonable to carry
19 on the limited business purpose of Upper East Side – the acquisition, management,
20 and sale of the Property.  Further, Anchor seeks redress for Defendants' breaches of
21 the Operating Agreement and for other bad faith conduct and breaches of fiduciary
22 duties relating to their conflicts of interest, including full restitution of Anchor's
23 investment of $250,000.00.  Defendants' conflicts of interests, illegal activity, and
24 gross mismanagement have caused substantial injury to Anchor's investment in
25 Upper East Side.

**THE PARTIES**

27    13.   Defendant Upper East Side Suites, LLC is a limited liability company
28

3
COMPLAINT

organized under the laws of the State of Delaware with a nominal principal office at 201 Stuyvesant Drive, San Anselmo, CA 94960. The purpose of Upper East Side is to acquire, hold, manage, operate, finance, develop, maintain and sell the real property and personal property related to 44-46 East End Avenue, New York, New York (the "Property").

14. Defendant Benedetto Cico is a resident of California, residing at 201 Stuyvesant Drive, San Anselmo, CA 94960. Benedetto Cico is a Class B Member and Manager of Upper East Side.

15. Defendant Carla Cico is a resident of the country of Italy, residing at Strada Castellana, 30/a, 37128 Verona, Italy. Carla Cico is a Class B Member and Manager of Upper East Side. Ms. Cico regularly conduct business in California and throughout the United States through USABOUND and her co-management of Upper East Side with her brother, Benedetto Cico.

16. Plaintiff Anchor is an English Limited Company with offices at 24 Bedford Row London WC1R 4TQ, UK. Anchor is a Class A Member of Upper East Side.

**JURISDICTION AND VENUE**

17. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy in this action exceeds $75,000, and is between citizens of different states and countries.

18. Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because no substantial part of the events or omissions giving rise to the claim occurred in any particular judicial district where Defendants are subject to personal jurisdiction and Defendants are subject to personal jurisdiction in this District. Defendants solicited investors throughout the world to invest in Upper East Side, entered into conflicting and self-dealing transactions in foreign countries with their separate corporation, USABOUND, and caused injury to Anchor and other Members of

Upper East Side outside of the United States. Defendants are subject to personal jurisdiction in this District by virtue of Upper East Side's nominal principal place of business in California, the Individual Defendants' Co-Management of Upper East Side, and Benedetto Cico's residency in California.

## GENERAL ALLEGATIONS

**A. Defendants' Formation of Upper East Side for the Limited Purpose of Management and Sale of the Property and Solicitation of Investments**

19. In or about July of 2007, Anchor was provided with an Executive Summary for an investment opportunity in Upper East Side, a newly-formed Delaware limited liability company.

20. The Executive Summary stated that Upper East Side was formed with the intention to acquire a five story residential building in New York City (the "Property" as defined above), with plans to rent the units in that building for short-term accommodations for leisure and corporate travelers from key international markets such as Italy, France, Spain and Scandinavia. The end goal, as stated in the Executive Summary, was to increase monthly revenues and to increase the value of the property in the medium to long term.

21. Defendants used their international business contacts to solicit investors from around the world. Through capital contributions from those investors, and an unknown number of loans, Upper East Side purchased the Property in December 2007.

22. Defendants Benedetto Cico and Carla Cico are Co-Managers and Class B Members of Upper East Side and each, individually, have a 7.5% membership interest in Upper East Side. Together, as Class B Members, Defendants Benedetto Cico and Carla Cico have a 15% membership interest in Upper East Side.

23. In or about January of 2008, Anchor invested $250,000.00 in Upper East Side, and was granted rights as a Class A Member. Defendants represented

5
COMPLAINT

that Anchor's Membership Interest was 1/15th, or 6.67%, of Upper East Side.

24. Anchor was thereafter provided with a copy of the Upper East Side Operating Agreement. The Operating Agreement sets forth a number of terms regarding the purpose of Upper East Side, as well as the rights, obligations, and duties of the Managers and various Members of Upper East Side.

**B.     The Upper East Side Operating Agreement**

25. Pursuant to Section 1.2 of the Operating Agreement, Upper East Side was authorized to acquire, hold, manage, operate, finance, develop, maintain, and sell the Property – no other business purpose was authorized.

26. Pursuant to Section 4.1 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico were required to make periodic distributions, not less often than once per year, of any cash available to the Members. Class A Members, such as Anchor, are entitled to priority in distributions over Class B Members, such as Benedetto Cico and Carla Cico.

27. Pursuant to Section 5.2 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico are prohibited from encumbering, or approving or consenting to the encumbering of, any assets of the Company for anything other than a Company purpose without approval of Upper East Side's Members.

28. Pursuant to Section 5.2 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico are prohibited from doing, approving or consenting to any act in contravention of the Operating Agreement without approval of Upper East Side's Members.

29. Pursuant to Section 5.2 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico are prohibited from doing, approving or consenting to any act which would make it impossible for the Company to carry on the ordinary business of the Company without approval of Upper East Side's Members.

30. Pursuant to Section 5.5 of the Operating Agreement, Defendants

Benedetto Cico and Carla Cico are prohibited from admitting additional Members to Upper East Side without the approval of Upper East Side's existing Members.

31. Pursuant to Section 5.5 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico are prohibited from approving any transaction between themselves and any of their Affiliates, including their travel company USABOUND, without the approval of Upper East Side's Members.

32. Pursuant to Section 5.12 of the Operating Agreement, Defendants Benedetto Cico and Carla Cico have the fiduciary responsibility for the safekeeping and use of all funds, property and assets of Upper East Side. Pursuant to the Agreement, the Defendants are prohibited from employing or permitting another to employ such funds, property or assets in any manner except for the benefit of Upper East Side.

33. As Class B Members, Defendants Benedetto and Carla Cico are required to give full and complete information of any material nature regarding legal process or papers concerning the business of the Company pursuant to Sections 5.13 and 5.20 of the Operating Agreement.

34. Pursuant to Section 6.1 of the Operating Agreement, the Managers are responsible for maintaining Upper East Side's books and records at Upper East Side's principal place of business, which is located at 201 Stuyvesant Drive, San Anselmo, California 94960. All members have the right to access, inspect and copy the books and records of Upper East Side.

35. Pursuant to Section 6.2 of the Operating Agreement, Upper East Side, at any Member's request must deliver to that Member Upper East Side's financial statements for the prior fiscal year within 90 days after the end of each fiscal year. Upper East Side's fiscal year ends on December 31st. Upper East Side is also obligated to deliver to every Member all tax information needed for that Member to prepare its federal income tax return within 90 days after the end of the fiscal year.

36. Pursuant to Section 6.3 of the Operating Agreement, before filing any tax return, Upper East Side must notify each Member that the return is ready to be filed and must give each Member the opportunity to review the proposed return. Upper East Side must provide a copy of the filed tax return to each of the Members.

37. Pursuant to Section 6.9 of the Operating Agreement, all leases, deeds, contracts, title matters, surveys, records and financial information relating to the ownership and development of the Property must be maintained by the Managers and accessible to all Members.

38. Pursuant to Section 8.1 of the Operating Agreement, Upper East Side must be dissolved upon the occurrence of any event which makes it unlawful for the business of Upper East Side to be carried on.

39. Pursuant to Section 8.1 of the Operating Agreement, Upper East Side must be dissolved upon a sale of the Property.

**C.     Defendants Fail to Provide Anchor With Information or Distributions**

40. Following Anchor's acquisition of its Membership Interest in Upper East Side, Defendants did not provide information about the progress of Upper East Side's business, any appreciation or depreciation of Anchor's Membership Interest, or important decisions regarding Upper East Side's business in contravention of the Operating Agreement and fiduciary obligations.

41. Defendants also have failed to deliver true and full financial statements or tax information. Moreover, in each year that Upper East Side operated, the Defendants did not notify Anchor that Upper East Side's tax return was ready to be filed and did not provide Anchor with the opportunity to review the prepared returns in contravention of the Operating Agreement and fiduciary obligations..

42. Upon information and belief, following Anchor's acquisition of its Membership Interest in Upper East Side, Defendants did not seek the approval of Anchor for a number of events that require the approval of Upper East Side's

Members – including entering into self-interested business transactions with USABOUND and admitting additional Members to Upper East Side which diluted Anchor's Membership Interest.

43. Anchor never received any distribution or profits from its investment and Membership Interest in Upper East Side. Upon information and belief, cash was available for distribution, but rather than distributing to Class A Members, Defendants Benedetto Cico and Carla Cico used those funds to benefit their separate business, USABOUND.

44. It was not until May 2015 that Anchor learned of the troubling developments within Upper East Side relating to Defendants' unlawful and self-interested conduct detrimental to Anchor's Membership Interest.

**D.    Defendants' Conflicts of Interest, Profits from Short-Term Rentals and Violations of Law**

45. Following the acquisition of the Property, Defendants marketed short-term rentals of residential units in the Property to international travelers throughout Europe through USABOUND. This was the primary intention of Defendants Benedetto Cico and Carla Cico, acting individually and on behalf of Upper East Side, at the time Upper East Side was formed – to solicit investments and create a vehicle to direct further revenues and clients to USABOUND.

46. Short-term rentals of residential units in the Property to European travelers was highly beneficial to the Defendants and USABOUND. USABOUND greatly benefited from the availability of the Property as a source for short-term rentals to its clients, and was able to generate a host of new business for USABOUND through Defendants Benedetto Cico and Carla Cico's control over the Property and Upper East Side. Upon information and belief, USABOUND collected separate fees from travelers in connection with short-term rentals of the property. In addition, upon information and belief, USABOUND took at least 15%

of the gross revenue from the Property.

47. In short, Defendants operated the Property, a residential building, as a hotel, allowing clients of USABOUND to "rent" individual units for terms of less than one month, and in many instances terms of less than one week, for non-residential purposes. This was primarily for the benefit of USABOUND and the Individual Defendants, through their collection of fees and revenues which diverted funds from Upper East Side and its Members. Rather than make distributions to Upper East Side Members like Anchor and provide returns on the Members' investments, Defendants benefitted themselves.

48. Further, this short-term rental activity continued even when it became highly detrimental to Upper East Side's value and the value of Anchor's Membership Interest because it continued to benefit Defendants Benedetto Cico and Carla Cico and their company, USABOUND.

49. In 2011, Defendants learned that the short-term rentals arranged through USABOUND were illegal. Upper East Side was served with notices of violation by the City of New York Environmental Control Board for the short-term rentals of residential property by USABOUND.

50. Defendants failed to inform Anchor of these legal proceedings, in contradiction of their fiduciary obligations and the terms of the Operating Agreement.

51. Defendants failed to inform Anchor as to the outcome of these legal proceedings, in contradiction of their fiduciary obligations and the terms of the Operating Agreement.

52. Defendants failed to inform Anchor that it had become unlawful to carry on the business of Upper East Side, i.e. short-term rentals of the Property to European tourists, in contradiction of their fiduciary obligations and the terms of the Operating Agreement. Defendants failed to dissolve Upper East Side upon learning

that their business model was illegal.

**E.  Defendants' Continuation of Conduct Detrimental to Anchor's Membership Interest, and Sale of the Property**

53. Rather than cease all short-term rentals of the Property following notice that they were illegal, Defendants continued to organize short-term rentals of the Property through their separate company, USABOUND.  This is because USABOUND depended on short-term rentals to generate money through Upper East Side.  USABOUND's clients are not long-term residential tenants.

54. Due to this continued illegal activity, Upper East Side's lender demanded full repayment of Upper East Side's outstanding loan balance, on the grounds that the loan agreements prohibited such illegal conduct.

55. In or about May of 2013, Defendants sold the Property.  Defendants failed to inform Anchor or seek Anchor's approval to a sale of the only asset of Upper East Side – the Property – in contravention of the Operating Agreement and their fiduciary obligations.

56. Defendants failed to dissolve and wind up the business upon the sale of the Property, despite Upper East Side's business purpose having been limited to acquisition, management, and sale of the Property.

57. Following the sale, Defendants have not provided an accounting of assets and finances of Upper East Side, and have refused to provide full and complete responses to Anchor's demands for information.

**FIRST CAUSE OF ACTION**

(Dissolution of Upper East Side)

58. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

59. Upper East Side's Operating Agreement provides that the company may only operate for the limited purpose of acquiring, managing, and selling the

Property.

60. Defendants sold the Property in May of 2013, without notice or approval to Anchor.

61. There is no business purpose outside of the Property in which Upper East Side is permitted to operate.

62. Defendants have acted, are acting, and/or will continue to act in a manner that is illegal, fraudulent, and oppressive to Anchor's Membership Interest.

63. Accordingly, it is not reasonably practicable to carry on the business of Upper East Side in conformity with Upper East Side's Operating Agreement.

64. The dissolution of Upper East Side will not be injurious to the public, and the rights of all persons who have dealt with Upper East Side will be unaffected by such dissolution.

65. An orderly dissolution of Upper East Side and liquidation of its assets should result in the payment of all its debts and creditors.

66. There are no provisions in the Upper East Side Operating Agreement that preclude the relief requested herein.

67. By reason of the foregoing, dissolution of Upper East Side is authorized under the Delaware Limited Liability Company Act § 18-801.

**WHEREFORE**, Anchor respectfully requests a judgment dissolving Upper East Side; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding, interest, as allowed by law; and such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**

(Appointment of a Temporary Receiver or Liquidating Trustee)

68. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

69. Through knowing violations of law, conflicts of interest, and sale of the

Property, Defendants have failed to abide by the Operating Agreement and continue to refuse to provide information necessary to determine the value of Upper East Side as a going concern.

70. Defendants fraudulent acts of self-dealing with USABOUND in contravention of the Operating Agreement and their fiduciary duties presently cause real imminent danger of great loss to Anchor and other Members of Upper East Side.

**WHEREFORE** Anchor respectfully requests that the Court appoint an independent temporary receiver to safeguard the remaining assets of Upper East Side; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding, interest, as allowed by law; and such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

(Equitable Accounting)

71. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

72. Defendants have admitted additional Members to Upper East Side without the consent of Anchor, and have engaged in self-dealing transactions with the Defendants Benedetto Cico and Carlo Cico's separate company, USABOUND. Following the sale of the Property, Defendants have not provided information relating to the sale and distribution of proceeds therefrom.

73. Defendants have refused, despite numerous requests over the course of several months, to provide documents and information about Upper East Side to enable Anchor to attempt to evaluate its Membership Interest in Upper East Side.

74. Anchor has no adequate remedy at law.

75. By reason of the foregoing, Anchor is entitled to an equitable accounting of the books and records of Upper East Side.

76. Anchor is also entitled to Upper East Side's books and records under the Operating Agreement and applicable Delaware statutes.

**WHEREFORE**, Anchor respectfully requests an order directing an accounting of the Upper East Side books and records under court supervision; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding, interest, as allowed by law; and such other and further relief as the Court deems just and proper.

## **FOURTH CAUSE OF ACTION**

(Breach of Contract)

77. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

78. Anchor has complied with all of its obligations under the Operating Agreement.

79. Defendants have breached the Operating Agreement by, *inter alia*:

   a. failing to dissolve Upper East Side following the realization that the business model was illegal;

   b. failing to dissolve Upper East Side following sale of the Property;

   c. failing to make periodic distributions to Anchor and other Members;

   d. entering into self-interested transactions with USABOUND without approval of Upper East Side's Members;

   e. continuing short-term rentals following realization that they were illegal without approval of Upper East Side's Members;

   f. failing to safekeep and use the funds, property and assets of Upper East Side for legitimate purposes;

   g. failing to advise other Members of legal process or papers

relating to the business of Upper East Side;

      h.    failing to keep records as required in the Operating Agreement for access by Members, including Anchor;

      i.    failing to provide Anchor with tax returns in a timely manner;

      j.    failing to provide true and full financial information in a timely manner.

80. As a result of the Defendant's wrongful conduct and omissions, Anchor has been injured and has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Anchor respectfully demands judgment against Defendants in an amount sufficient to compensate it for damages caused by Defendants' breach of contract; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding; interest, as allowed by law; and such other and further relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION

(Breach of Fiduciary Duty –

Against Defendants Benedetto Cico and Carla Cico)

81. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

82. Pursuant to Upper East Side's Operating Agreement and Delaware Law, Benedetto Cico and Carla Cico, as Co-Managers of Upper East Side, owe Anchor a fiduciary duty.

83. Further, Benedetto Cico and Carla Cico owe Anchor a duty to discharge their duties as managers of Upper East Side in accordance with the good faith business judgment in the best interests of Upper East Side, and to refrain from conflicts of interest that adversely affect the business and affairs of SMB.

84. Because Benedetto Cico and Carla Cico have conflicts of interest in that they own a separate company, USABOUND, which benefited greatly from

transactions which ultimately led to the sale of the Property and significant diminution of the value of Upper East Side and Anchor's Membership Interest therein, Benedetto Cico and Carla Cico are not entitled to the protections of the business judgment rule.

85. Benedetto Cico and Carla Cico have not acted in good faith with respect to the conduct of the business and affairs of Upper East Side, and are therefore liable and accountable to Anchor as a Member of Upper East Side for their bad faith conduct set forth above.

86. In the alternative, even if Benedetto Cico and Carla Cico acted in good faith with respect to the conduct of the business and affairs of Upper East Side, they are nevertheless liable to Anchor as a Member of Upper East Side for their reckless misconduct, gross negligence, and breach of fiduciary duty as alleged above.

87. As a direct and proximate result of Benedetto Cico and Carla Cico's wrongful conduct and omissions, Anchor has been injured and has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Anchor respectfully demands judgment against Benedetto Cico and Carla Cico, jointly and severally, in an amount sufficient to compensate it for the damages proximately caused by the Benedetto Cico and Carla Cico's breach of fiduciary duty; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding, interest, as allowed by law; and such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment)

88. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs, as though set forth fully herein.

89. Based upon the foregoing described conduct, Defendants have been unjustly enriched by retaining Anchor's $250,000.00 investment in Upper East Side.

90. Retention under these circumstances is unjust and inequitable because Defendants never intended to manage Anchor's investment in Upper East Side as a legitimate business venture – rather they sought to use Anchor's $250,000.00 investment for the sole purpose of benefitting their separate company, USABOUND, through illegal conduct.

91. Anchor has conferred a benefit upon Defendants by investing $250,000.00 in Upper East Side.

92. Defendants have been unjustly enriched in retaining the revenues derived from Anchor's investment in Upper East Side. Because Defendants' retention of the non-gratuitous benefit conferred on it by Anchor is unjust and inequitable, Defendant must pay restitution to Anchor, as ordered by the Court.

**WHEREFORE**, Anchor respectfully demands judgment against Defendants ordering restitution and disgorgement of Anchor's $250,000.00 investment in Upper East Side; as well as costs and reasonable attorneys' fees incurred in prosecuting this proceeding, interest, as allowed by law; and such other and further relief as the Court deems just and proper.

DATED: July 17, 2015

KELLEY DRYE & WARREN LLP

Richard F. DeLossa (STATE BAR NO. 245181)
James B. Saylor (*pro hac vice* forthcoming)


By  //s// Richard F. DeLossa

Attorneys for Anchor Holdings, Ltd.

## DEMAND FOR TRIAL BY JURY

Plaintiff Anchor International Holdings, Ltd. hereby demands a trial by jury on all issues triable by jury.

DATED: July 17, 2015	KELLEY DRYE & WARREN LLP

Richard DeLossa (STATE BAR NO. 245181)
James B. Saylor (*pro hac vice* forthcoming)

By  //s// Richard F. DeLossa

Attorneys for Anchor Holdings, Ltd.